UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                                                              :

JOHANN DANECKER and J AND A HERITAGE     :
REALTY CORP.,
                                                                                                              :
                                                                                                               :        12 Civ. 1475 (PAE)
                                       Plaintiffs,        :
                                                                              :        <u>OPINION & ORDER</u>
                               -v-                                   :
                                                                                                            :
THE BOARD OF TRUSTEES OF THE SERVICE     :
EMPLOYEES 32BJ NORTH PENSION FUND,       :
                                                                                                            :
                                      Defendant.      :
                                                                                                               :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        In this action, Plaintiffs Johann Danecker ("Danecker") and J and A Heritage Realty Corp. ("J&A") sue The Board of Trustees of the Service Employees 32BJ North Pension Fund (the "Fund"), alleging violations of the Employee Retirement Income Security Act ("ERISA"), specifically 29 U.S.C. § 1132(a)(1)(B), in connection with the Fund's denial of pension benefits to Danecker. A building superintendent, Danecker retired from J&A in September 2001 after working for approximately 18 years as a member of the Service Employees International Union, Local 32E, AFL-CIO ("Local 32E"). He claims that pension contributions were paid on his behalf to the Fund, but that, after he had been paid a pension for 14 months, the Fund suspended his benefits, and notified him that he was not entitled to that pension. Plaintiffs seek, *inter alia*, an order that the Fund pay out the pension or, alternatively, pay damages equating to the sums contributed to the Fund on Danecker's behalf. The Fund now moves to dismiss all counts. For the following reasons, defendant's motion is granted in its entirety.

I.   **Factual Background**[1]

Between 1983 and 2001, Danecker worked as a building superintendent at a Bronx property located at 2954 East 196th Street. Compl. ¶¶ 5, 9. During that period, he worked for three realty companies: Vanpel Realty Corp. (1983–1986); Grand Management Co. (1986–1988); and J&A (1988 until his retirement on September 30, 2001). *Id.* ¶ 9. At all times, Danecker was a member in good standing of Local 32E. *Id.* Pension contributions during this period were forwarded on Danecker's behalf to the Fund. *Id.* ¶ 10.

In 2001, Danecker applied for pension benefits from the Fund. He was awarded a pension of $589 per month, with a survivor's benefit to his wife of $295 per month, both based on his 18 years of service. *Id.* ¶ 11. For 14 months after his retirement, Danecker received monthly pension payments, totaling $8,246. *Id.* ¶ 12.

On October 23, 2002, the Fund suspended Danecker's monthly pension payments, stating that Danecker was not entitled to them. As alleged by Danecker, the Fund's explanation was that J&A, his employer during his last 13 years of work, had ceased in 1991 to be a signatory to a collective bargaining agreement with Local 32E, and that the Fund was prohibited from accepting pension contributions other than those made pursuant to a collective bargaining agreement. *Id.* The Fund represented to Danecker that, in 1991, J&A had ceased to pay dues to the Bronx Realty Advisory Board (the "BRAB"), the association that represented owners, managers, agents, and/or operators of apartment houses and office buildings which employed

---

[1] The following facts are drawn primarily from the Complaint ("Compl.") (Dkt. 1), and are taken as true for the purposes of resolving this motion. Other sources drawn upon are: Defendant's Memorandum of Law in Support of Its Motion to Dismiss ("Def.'s Mot. To Dismiss") (Dkt. 7); Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pls.' Opp'n") (Dkt. 12); Danecker's Affidavit in Opposition to Defendants' Motion to Dismiss ("Danecker Aff.") (Dkt. 10), which contained exhibits incorporated by reference in the Complaint; and Defendant's Reply Memorandum of Law in Support of Its Motion to Dismiss ("Def.'s Reply") (Dkt. 14).

members of Local 32E.  *Id.* ¶ 13.  The BRAB had been a signatory to successive collective bargaining agreements with the union.  *Id.*

Danecker alleges that he is entitled to benefits because J&A made pension contributions on his behalf to BRAB beginning on or about July 1, 1988, and that, even after J&A ceased paying association dues to BRAB in 1991, it continued to pay contributions to the Fund on his behalf, and to remit union dues to Local 32E on his behalf, until he retired.  *Id.* ¶ 14.  Danecker points to letters between Local 32E, BRAB, and J&A that, he alleges, corroborate this arrangement.  *Id.* ¶¶ 15–23.  Danecker also claims that Local 32E President Robert Chartier personally promised him that, "as long as he continued to pay the union dues and [J&A] continued to forward the Pension Fund contributions," he "would receive a pension upon retirement."  *Id.* ¶ 19.

On October 23, 2002, Danecker received the letter terminating his benefits.  *Id.* ¶ 23.  He and J&A responded, seeking reinstatement of his benefits.  *Id.* ¶ 24.  However, on February 12, 2003, the Fund wrote Danecker again, reiterating its conclusion.  The Fund stated that Danecker had not submitted "any information regarding whether [J&A] was a signatory to any agreement requiring contributions to be made on your behalf for any year subsequent to 1991."  Danecker Aff. Ex. 2.  The Fund's February 12, 2003 letter expressly notified Danecker of his "right to appeal this determination to the Board of Trustees as detailed . . . [in] your summary plan description (a copy is enclosed for your review)."  *Id.*

On February 26, 2003, Danecker appealed to the Fund's Board.  Compl. ¶ 25.  On June 13, 2003, the Board—although acknowledging that J&A had contributed to the Fund until Danecker's retirement—denied Danecker's appeal.  It explained that there was no "valid collective bargaining agreements or any other type of agreement that required contributions to

3

the Fund." Danecker Aff. Ex. 4. The Fund also asked Danecker to return the $8,246 he had received in monthly pension payments before his benefits were cancelled. This was because, once his post-1991 service was removed from consideration, he had not met the 10-year service period required for the benefits to vest. *Id.*

On February 28, 2012, more than eight years after his administrative appeal was denied, Danecker, along with J&A, brought this lawsuit under ERISA, specifically 29 U.S.C. § 1132(a)(1)(B). Plaintiffs seek reinstatement of Danecker's monthly benefits or, alternatively, an order that the Fund return to them all contributions made to the Fund on Danecker's behalf. Plaintiffs also seek attorneys' fees. On April 27, 2012, the Fund moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), plaintiffs must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (internal quotation marks and citation omitted). On the other hand, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

4

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (noting that a court is "'not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### III.     Discussion

#### A.     The Statute of Limitations

The Fund's primary argument is that Danecker's claim is barred by the statute of limitations, and that the facts do not justify equitable tolling of the limitations period.

Danecker's benefits claim against the Fund is subject to the six-year limitations period applicable to contract claims. *See Miles v. N. Y. State Teamsters Conference Pension & Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983). There is some difference of opinion among district courts in this Circuit about when a cause of action accrues under ERISA for improper denial of benefits. *Compare Mitchell v. Shearson Lehman Bros. Inc.*, No. 97-cv-0526, 1997 WL 277381, at *3, *superseded on other grounds* (S.D.N.Y. May 27, 1997) (holding that a cause of action accrues when administrative remedies are exhausted), *with Patterson-Priori v. Unum Life Ins. Co.*, 846 F. Supp. 1102, 1108 (S.D.N.Y. 1994) (holding that a cause of action accrues at the time of the initial denial of benefits). The Second Circuit has not had occasion to resolve this question. *See Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 324–25 (2d Cir. 2004) ("We need not decide, however, which of the two approaches is technically correct."). This issue, however, is of no moment here: Whether Danecker's cause of action accrued in 2002, when his benefits were initially denied, or in 2003, when he exhausted his administrative appeals, the limitations period has run. Even taking the view most favorable to Danecker—that his claim accrued on June 13, 2003, when the Fund denied his appeal—the statute of limitations expired on June 13, 2009, two and a half years before he filed suit.

Plaintiffs, accordingly, oppose the motion to dismiss on grounds of equitable tolling. They argue that, because the Fund allegedly failed to abide by regulations requiring it to notify Danecker of his right to file a civil lawsuit, the statute must be equitably tolled. They rely on the Second Circuit's decision in *Veltri*, which applied equitable tolling to a claim that pension benefits were wrongly denied, based on the Circuit's determination that the plaintiff had received legally deficient notifications of his rights.

As detailed below, however, *Veltri* is inapposite, and the standards for equitable tolling are not satisfied. Most important, plaintiffs have not established that the Fund failed to provide Danecker with any legally required notice of his rights.

B.     **The Notice Requirements**

Plaintiffs argue that the Fund was legally obligated by 29 C.F.R. § 2560.503–1(g)(1)(iv) to notify Danecker of his right to file a civil suit, but did not do so. On this basis, plaintiffs pursue equitable tolling. *See* Compl. ¶ 28 (asserting that the lawsuit was timely, based solely on the Fund's failure "to provide the required notice in writing to bring a court action"). However, by its plain language, that regulation does not apply to Danecker's claim for pension benefits, as the Court now explains.

In November 2000, after notice and comment, the Secretary of Labor amended 29 C.F.R. § 2560.503–1, which governs benefit claims procedures for employee benefit plans. *See* Rules and Regulations for Administration and Enforcement, Claims Procedure, 65 Fed. Reg. 70,246, 70,246 (Nov. 21, 2000) (to be codified at 29 C.F.R. 2560.503–1). Specifically, the Secretary— pursuant to authority granted under 29 U.S.C. § 1133 and § 1135[2]—altered, *inter alia*, the notice

---

[2] Section 1133, which addresses claims procedure, reads:
    In accordance with regulations of the Secretary, every employee benefit plan shall—

required to be given a claimant after an adverse benefits determination. *Id.* The prior regulation had mandated that a denial of a claim be accompanied by "[a]ppropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review." 29 C.F.R. § 2560.503–1 (amended November 2000). The new regulation—adopted to, *inter alia*, further the goal of assuring "that participants and beneficiaries [ ] be afforded a full and fair review of denied claims," Claims Procedure, 65 Fed. Reg. at 70,246—requires that a more fulsome notification be given. Specifically, the claimant must be given "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action . . . following an adverse benefit determination on review." 29 C.F.R. § 2560.503–1(g)(1)(iv).

Important here, however, the amended regulations clearly state that they "shall apply to claims filed under a plan on or after January 1, 2002." *Id.* § 2560.503–1(o)(1). The courts to address this regulation have uniformly held that the amended regulations do not apply to claims filed before January 1, 2002. *See Koert v. GE Grp. Life Assur. Co.*, 231 F. App'x 117, 120–21 (3d Cir. 2007) ("It is true that under 29 C.F.R. § 2560.503–1(g)(iv), a notification of an adverse benefit determination must state that a claimant has a right to bring civil suit . . . . But this regulation applies only to claims filed on or after January 1, 2002. 29 C.F.R. § 2560.503–

---

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Section 1135 delegates the power to enact implementing regulations to the Secretary.

7

1(o)(1).  Koert filed her claim—and GE made its adverse determination—well before this date. The regulation does not apply."); *Bard v. Boston Shipping Ass'n*, 471 F.3d 229, 236 n.7 (1st Cir. 2006) ("Bard's claim, filed after January 1, 2002, is governed by the new regulations.  *See* 29 C.F.R. § 2560.503–1(o)(1)."); *Bond v. Twin Cities Carpenters Pension Fund*, 307 F.3d 704, 709 (8th Cir. 2002) ("Mr. Bond also relies on regulations relevant to [29 U.S.C.] § 1133 that apply to all claims filed on or after January 1, 2002.  *See* 29 C.F.R. § 2560.503–1(o)(1) (2001).  Both parties, however, recognize that these regulations do not control Mr. Bond's claim because his claim was filed before they went into effect."); *Solnin v. Sun Life & Health Ins. Co.*, No. 08-cv-2759, 2012 WL 1888132, at *7 (E.D.N.Y. May 23, 2012) ("By its terms, the current version of [29 C.F.R. § 2560.503–1] applies only 'to claims filed under a plan on or after January 1, 2002.'").

The Court is not at liberty to override the language of this regulation, because it is plain and unambiguous.  "In interpreting an administrative regulation, as in interpreting a statute, we must begin by examining the language of the provision at issue."  *Resnik v. Swartz*, 303 F.3d 147, 151–52 (2d Cir. 2002); *see United States v. Gagliardi*, 506 F.3d 140, 145 (2d Cir. 2007).  "[T]he plain meaning of language in a regulation governs unless that meaning would lead to absurd results."  *Forest Watch v. U.S. Forest Serv.*, 410 F.3d 115, 117 (2d Cir. 2005) (internal quotations omitted).

Based on the allegations in the Complaint, there is no basis to claim that the Fund failed to comply with applicable regulations.  According to the Complaint, "Danecker filed an application for pension benefits with the Fund in calendar year 2001."  Compl. ¶ 11.  Although the Complaint does not recite the specific date in 2001 when Danecker filed his claim, any such

date, necessarily, was before, not "on or after," January 1, 2002. *See* 29 C.F.R. § 2560.503–1(o)(1). Thus, the amended regulation did not apply to his claim.

The Fund's February 12, 2003 letter, denying Danecker's claim for benefits, undeniably complied with the regulations applicable to claims filed prior to January 1, 2002. That letter notified Danecker in no uncertain terms of his "right to appeal this determination to the Board of Trustees as detailed on page 14 of your summary plan description. . . ." Danecker Aff. Ex. 2; *see also* 29 C.F.R. § 2560.503–1(f) (amended November 2000) (notice must include "[a]ppropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review"). Plaintiffs do not dispute that this notice was adequate to inform Danecker of his rights under the regulations applicable to claims filed before January 1, 2002 (*i.e.*, the regulations as they stood prior to the amendment on which plaintiffs rely). *See* Compl. ¶ 24.[3]

### C.     *Veltri* and the Remedy of Equitable Tolling

In seeking equitable tolling, plaintiffs rely on the Second Circuit's decision in *Veltri*, which equitably tolled the statute of limitations under circumstances that, at first glance, resemble those here. Specifically, *Veltri* found equitable tolling appropriate where inadequate notice of the claimant's rights had been given in connection with the denial of a claim for pension benefits filed before January 1, 2002. However, upon examination, *Veltri*, and the doctrine of equitable tolling, do not apply here.

---

[3] Nor do plaintiffs allege failure to comply with separate regulations that, at all relevant times, required that the summary plan description notify participants of the right to bring a civil action. *See* 29 C.F.R. § 2520.102-3(t) (requiring plan to include language similar or identical to: "If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court.") (language unchanged in amended regulation). Nor do plaintiffs dispute that the summary plan description was included along with the February 12, 2003 letter, as that letter represented. Plaintiffs' claim is instead focused solely on the alleged deficiency of the Fund's letter reporting its adverse benefits determination.

Equitable tolling is "an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri*, 393 F.3d at 322; *see Haekal v. Refco Inc.*, 198 F.3d 37, 43 (2d Cir. 1999). Equitable tolling gives courts leeway to extend the limitations period beyond its expiration "'as necessary to avoid inequitable circumstances.'" *Saunders v. City of N. Y.*, 594 F. Supp. 2d 346, 359 (S.D.N.Y. 2008) (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996)). The burden of proving that tolling is appropriate rests with the plaintiff. *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002) (additional citations omitted). "This Court has applied the doctrine as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights, or h[as] asserted his rights in the wrong forum." *Patraker v. Council on Env't of N. Y. City*, No. 02-cv-7382, 2003 WL 22703522, at *2 (S.D.N.Y. Nov. 17, 2003) (internal quotations omitted).

The plaintiff in *Veltri* had applied for benefits under ERISA in 1992. *Veltri*, 393 F.3d at 321. He received a letter from the defendant pension fund explaining that a portion of his service would not be credited because he had not worked consistently in the industry. *Id.* The pension fund's letter did not provide Veltri with *any* information about his right to challenge this adverse determination: It said nothing about an administrative appeal, let alone the right to bring a civil suit, although the letter did refer to the underlying plan, which, apparently, contained information about both options. *Id.* at 321, 323; *Veltri* Defs.' Reply 3 (No. 03–9287 (2d Cir.)). During the next 11 years, Veltri "called the Fund on several occasions but [he] received no response." *Veltri*, 393 F.3d at 322. In 2001, Veltri again inquired by letter about his uncredited service, but the pension fund told him that the break in his service precluded him from relief. *Id.* Veltri

10

thereafter hired an attorney, who in turn was also repeatedly ignored by the pension fund. Eventually, in 2002, Veltri filed a lawsuit which, in 2004, reached the Second Circuit. *Id.*

Significantly, in *Veltri*, it was undisputed that the defendant pension fund had failed to comply with its duty under the Secretary's regulations to notify Veltri of his rights. *See id.* at 323 ("It is uncontested that defendants failed to fully comply with the regulatory notice requirements."). Indeed, a review of the parties' appellate briefs in *Veltri* reveals that there was no claim made that Veltri had received legally satisfactory notice. Instead, the pension fund sought to enforce the six-year statute of limitations, arguing that its *admitted* non-compliance with the governing regulations did not justify equitably tolling the limitations period. The Second Circuit rejected that bid. It faulted the pension fund for not advising Veltri of either his right to administratively appeal the denial of his benefits or the possibility of a civil suit. *Id.* (noting fund's non-compliance with "federal regulations"). And it rejected the fund's argument that merely supplying Veltri with an informational booklet along with its letter excused its lapse. *See id.* at 324 ("[M]erely enclosing the booklet with the letter—which contained no reference to specific pages in the booklet and no reference to appeal procedures—did not satisfy the regulation's requirement . . . .").

The Second Circuit, however, pointedly cabined its ruling. *Id.* at 326. It stated that it was "not establishing a simple mechanical rule" that failure to comply with federal regulations governing notice to pension claimants "automatically tolls the statute of limitations." *Id.* It also cautioned that equitable "tolling is an extraordinary remedy because if applied too liberally it threatens to undermine the purpose of statutes of limitations of allowing potential defendants predictability and ultimate repose." *Id.*

11

*Veltri* is, therefore, readily and appropriately distinguishable. In *Veltri*, it was undisputed that the pension fund had violated federal regulations governing notice to the pension claimant as to his right to challenge the adverse determination. Here, based on the pleadings, Danecker does not have a bona fide claim of any such non-compliance.

To be sure, in *Veltri*, the Second Circuit described the pension fund's non-compliance broadly, as entailing a failure to notify the claimant both of (1) his right to appeal the adverse determination and (2) his right to file a civil lawsuit. In fact, in light of Veltri's 1992 filing date—a date preceding the January 1, 2002 effective date of the Secretary's amended regulation—it appears that the applicable federal regulations put the pension fund in *Veltri* under a duty to notify Veltri of only the former rights, not the latter. Thus, in stating that the pension fund had failed to discharge its duties under federal regulations, the Second Circuit may have overstated the extent of the pension fund's breach of those duties.[4] But the broader point is that *Veltri*'s determination that equitable tolling was merited turned on the fact—undisputed—that the pension fund had breached its notice duties under federal law to Veltri. That is not the case here. Rather, as the Court has found, the Fund was in compliance with the notice regulations applicable at the time. *Compare* Pls.' Br. 3 (conceding that notice was given of Danecker's right to appeal the initial determination), *with Veltri*, 393 F.3d at 324 ("The letter . . . , which did state the Fund's reasons for denying Veltri's claim to additional benefits based on his pre-1970 service, did not advise him of his right to appeal that denial.").

*Veltri* is further inapposite in that there are no allegations here that the Fund engaged in any of the cagey, unresponsive conduct toward the claimant chronicled in that case—conduct

---

[4] The Second Circuit's opinion did not note the effective date (January 1, 2002) of the amended regulation that required the pension fund to notify claimants of their right to file a civil lawsuit. The appellate record in that case indicates that no party brought that effective date to the Court's attention.

12

which effectively stymied Veltri's attempts to pursue his claim.  On the contrary, based on the allegations in the Complaint, the Fund appears to have replied to each of Danecker's letters, and to have done so within a reasonable time frame and with a response to the concerns he had raised.  Where Veltri repeatedly tried to contact those in charge of his pension to obtain relief, Danecker, following the February 12, 2003 letter, was inactive for more than eight years before filing suit.  Indeed, since *Veltri*, the Second Circuit has held that "a plaintiff, who would otherwise be entitled to rely 'on equitable tolling on the basis of defective notice,' could forfeit that right if he failed to exercise due diligence to the prejudice of the defendant."  *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 183 (2d Cir. 2008) (quoting *Veltri*, 393 F.3d at 326).  Danecker's reliance on *Veltri* is therefore misplaced.

The Court notes, finally, that district courts in this Circuit, notwithstanding *Veltri*, have declined to apply the Secretary's new notice regulations to claims filed before January 1, 2002.  *See Solnin*, 2012 WL 1888132, at *7 (declining to apply the amended regulation in a suit over a claim that was filed and approved in 1999, but subsequently rejected in 2002); *Frishberg v. Deloitte & Touche Pension Plan*, No. 07-cv-1081, 2008 WL 4000569, at *4–5 (D. Conn. Aug. 26, 2008) ("However, although Frishberg was not informed of his right to sue when his appeal was denied, the regulation upon which the *Veltri* holding was premised was not in effect in 1998 when [he made his original claim]; rather, it was added in 2001.  Thus, the Plan acted in conformity with the ERISA regulations in place at the time, and cannot be said to have fraudulently concealed Frishberg's right to sue from him.").[5]

---

[5] *Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan*, 497 F.3d 234 (2d Cir. 2007), on which plaintiffs rely, is inapposite.  *Strom* turned on a plan's admitted failure to notify the claimant of the right to an administrative appeal.  *Id.* at 246 ("When a plan assiduously refuses to provide a claimant with information concerning her eligibility or administrative review rights

13

The Court, accordingly, holds that plaintiffs' claim here is time-barred, because it was filed outside the six-year statute of limitations; and that the doctrine of equitable tolling does not apply, because the Fund neither violated federal notice regulations nor engaged in any other conduct tending to "conceal the existence" of Danecker's cause of action. *Veltri*, 393 F.3d at 323. Plaintiffs' claim must therefore be dismissed.

### D. J&A's Claim

The ERISA claim brought by J&A merits dismissal on an additional ground. The Second Circuit has held that an employer lacks standing to pursue a claim under 29 U.S.C. § 1132(a), ERISA's civil enforcement provision. *See Tuvia Convalescent Ctr. Inc. v. Nat'l Union of Hosp. & Health Care Emps.*, 717 F.2d 726, 730 (2d Cir. 1983) ("[W]e hold that Tuvia, as an employer, did not have standing to bring an action under § 1132 of ERISA."); *King v. Audax Const. Corp.*, No. 02-cv-582, 2007 WL 2582103, at *10 (E.D.N.Y. Sept. 5, 2007) ("The Second Circuit Court of Appeals has repeatedly interpreted 29 U.S.C. § 1132(a) to prohibit employers from bringing ERISA claims."). The Court therefore dismisses J&A for lack of standing.

### E. Dismissal With Prejudice

Plaintiffs alternatively respond to the motion to dismiss by asking that any dismissal be without prejudice so that J&A may be allowed to pursue a restitution claim against the Fund. Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires." However, "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007); *see also*

---

under the plan, any alleged waiver simply cannot be knowing or voluntary."); s*ee also* Pls.' Opp'n 8; Def.'s Reply 5. No such lapse occurred here.

*LSSi Data Corp. v. Time Warner Cable Inc.*, No. 11-cv-7780, 2012 WL 933078, at *2 (S.D.N.Y. Mar. 20, 2012).

Leave to amend here would clearly be futile.  J&A's restitution claim is equally as time-barred as the ERISA claims that it and Danecker have brought here, and plaintiffs do not make any substantial argument to the contrary.  The relevant statute of limitations for restitution claims in New York is six years.  *See* N.Y. C.P.L.R. § 213(1); *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 262 (S.D.N.Y. 2006) (under New York law, claims sounding in restitution are governed by the six-year statute of limitations per § 213(1)); *Hughes v. LaSalle Bank NA*, 419 F. Supp. 2d 605, 613 (S.D.N.Y. 2006), *vacated on other grounds* (same).  Even assuming the construction most favorable to J&A—that its cause of action accrued when Danecker's administrative appeal was denied—the limitations period began to run on June 13, 2003.  The statute of limitations, then, expired on June 13, 2009, six years later.  This suit was brought more than two and half years after that date.  J&A offers no reason, other than those discussed and rejected above, why it is entitled to equitable tolling of the limitations period.  The Court, therefore, is compelled to dismiss the Complaint with prejudice.  Plaintiffs' request for attorneys' fees is also denied.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss the plaintiffs' lawsuit in its entirety, and with prejudice, is GRANTED. The Clerk of Court is instructed to terminate the motion pending at docket entry 6 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: August 2, 2012
       New York, New York